## CHESTER v THORPE a/k/a CHESTER
### Case No. 88-1057-FR-17
Nineteenth Judicial Circuit, St. Lucie County

April 11, 1989

### APPEARANCES OF COUNSEL

**William E. Raikes, III,** for petitioner.

**Evett L. Simmons,** for respondent.

### OPINION OF THE COURT

JOHN E. FENNELLY, Circuit Judge.

### *FINAL JUDGMENT*

THIS MATTER came on for hearing pursuant to the Former Husband's petition. The Husband seeks an Order that would place primary physical residence of the minor, SHONDRIKA, with him.

This case presents a somewhat unique fact pattern. The parties were married on 21 March 1971 and divorced on 22 August, 1977. The Final Judgment makes no provision for Shondrika whatsoever. Ms. Thorpe, the evidence demonstrates, was unaware of her pregnancy when the marriage was dissolved. Shondrika, their child, was born on 9 January, 1978. It is undisputed that the former husband is the child's natural father.

After the dissolution and birth, Ms. Thorpe returned to Fort Pierce from Orlando. Ms. Thorpe upon arriving in Ft. Pierce resided with her mother for one year. Ms. Thorpe, after that initial period, has lived periodically with her mother and at other residences. Ms. Thorpe's basic pattern of residence, the evidence shows, is unstable.

Ms. Thorpe's second marriage ended in divorce in 1987. She has been employed as an upholsterer for the past six years at Furniture Beauty Nook, where she earns approximately seven hundred dollars per month. Her occupational history, it appears, is stable.

Mr. Chester married Ora Jones Chester in 1986. Mrs. Chester is a credit union manager and Mr. Chester is a computer technician. His income is approximately twenty-seven thousand dollars per year. He has been employed by TRW Customer Service Division for the past fifteen years. Mr. Chester has resided in West Palm Beach since 1985.

This matter, i.e. Shondrika's primary residence, was before Judge Kenney on 21 October, 1988. Judge Kenney awarded Ms. Thorpe primary residence *on a temporary basis*. In his Order, Judge Kenney expressed his concern over "the care being given the child" by the mother. The Judge ordered a home study and advised "any further evidence of neglect could result in further relief for the petitioner."

The home studies have been completed and considered by the Court. Ironically, the H.R.S. studies, conducted in West Palm Beach and Fort Pierce, present the Court with contradictory recommendations. The Court has also heard extensive testimony concerning the best interests of the child.

At the outset, the Court is firmly convinced that the mother and father genuinely care for the child. Emotional feeling alone, however, cannot and should not determine the child's best interest.

Undisputed evidence has established Ms. Vera Gamble, the maternal grandmother, currently provides most of the supervision for this child. Shondrika sleeps at her grandmother's. Ms. Gamble also prepares her breakfast and makes sure she attends school. Ms. Gamble's testimony conveyed in no uncertain terms her concern that the child is not being properly supervised by her daughter. Ms. Gamble feels that she is unable to properly supervise the child as she nears adolescence. She feels that the present instability and lack of supervision will result in problems. Ms. Gamble expressed love for both her daughter and granddaughter, but felt without reservation or qualification, that Shondrika's best interest would be served by a change in the present situation.

Ms. Flynn, the child's fifth grade teacher, testified that the child's

142

school work and deportment have seriously deteriorated this year. The teacher feels and testified that the child is undisciplined. She has communicated that concern to Ms. Thorpe as well as the child's lack of academic progress. There has been no improvement in her behavior or performance.

Hamp and Ora Chester both testified that in their view the child was unmotivated and undisciplined. They expressed concern that as the child reaches adolescence this condition will only worsen. They contend that the lack of supervision is the primary cause of the child's present problems.

Mr. Chester expressed his view that the child resists discipline because of her mother's influence and resistance to his efforts to bring stability into the child's life.

Ms. Allen, an H.R.S. worker, testified in support of the mother. Her report and testimony reflect that she did not speak to Ms. Gamble and was unaware that the child spent most nights with her grandmother. Ms. Allen was also unaware of the school situation as related by Ms. Flynn. She was of the view that Shondrika was simply "stressed out" because of the pending action.

Ms. Thorpe's testimony revealed that the child was in fact spending most evenings with her mother and that her mother ensures that the child gets to school. Ms. Thorpe also testified that no one had informed her of her daughter's academic problems. This is, of course, totally at variance with Ms. Flynn's testimony. Ms. Thorpe also admitted that she is "not much of a cook" and Shondrika eats at McDonald's or her mother's or sister's homes. Finally, Ms. Thorpe indicated that she continued to leave her daughter with her mother after the initial Order because she thought the Court required it. She now indicates that if awarded primary physical custody she will fully discharge her responsibilities as a parent.

Turning to the statutory criteria the Court finds that there exist strong emotional ties between both parents and the child. The Court is concerned that the chaotic life-style of the mother will and has impeded the father's contact with the child. Turning to capacity and disposition of each parent to provide for the child, the Court finds this factor heavily weighted in favor of the father. The Court in no way has relied only on the disparity in income and resources between the parties. Rather, on the evidence, as previously discussed, the father seems much more capable of eliminating the present chaos surrounding the care of this child. Stability, at first blush, would seem weighted in favor of the mother. However, the evidence clearly demonstrates that

143

the present situation militates against a finding that the present environment is satisfactory. This conclusion is buttressed by the child's declining school performance and emerging behavior dysfunctions. The Court has considered the preference of the child in conjunction with the other criteria previously noted.

As the Third District noted in *Dugan v Gorcage*, 504 So.2d 1283, 11 FLW 1516 "Past actions and conduct, at some point, must outweigh as a matter of law bare promises to do better." The mother's failure to alter her behavior in spite of the previous Order is in the Court's view highly significant.

As in *Swerdlin v Swerdlin*, 513 So.2d 1123 (Fla. 4th DCA 1987), the Court is convinced after a review of the evidence and the exhibits that primary physical residence with the father would serve the present and future best interests of this child.

Mindful of the disparity in incomes between the parties, the Court will not require child support from the mother. For the same reason, the Court will award attorney's fees to the mother. The mother will, of course, be granted visitation in accordance with the Court's standard Order, the agreements of the parties, or further Order of the Court. In accordance with *Parker v Parker*, 519 So.2d 673 (Fla. 1st DCA 1988) and F.S. 61.13(2)(b)(1) the child will not be removed from the State of Florida except upon further Court Order.

The Court retains jurisdiction to enforce this Order and for such other relief as may be lawful and appropriate.

DONE AND ORDERED this 11th day of April, 1989.